UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Wave Petroleum Operating, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> New IPT, Inc., <br><br> Defendant. | Case No. _____ |

## COMPLAINT

Plaintiff Wave Petroleum Operating, LLC ("Wave"), by and through its undersigned attorneys, for its claims against Defendant New IPT, Inc. ("New IPT") states and alleges as follows:

### PARTIES

1. Wave Petroleum Operating, LLC is a limited liability company, organized under the laws of the State of North Dakota, with its principal place of business located at 103 5th Street Southeast, Dickinson, North Dakota, 58601-6022. All members of Wave are citizens of the State of North Dakota.

2. New IPT, Inc. is a corporation, organized under the laws of the State of Delaware, with its principal place of business located at 1707 Cole Boulevard, Suite 200, Golden, Colorado, 80401.

### JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332. The parties hereto are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. The Court has personal jurisdiction over New IPT, and venue is proper in the United States District Court for the District of North Dakota pursuant to 28 U.S.C. § 1391(b), because New IPT has continuous and systematic contacts with North Dakota arising from its commercial activities in North Dakota, including, among other things, contracting to conduct, and actually conducting, certain work on oil and gas wells located in North Dakota.

## FACTUAL ALLEGATIONS

5. Wave is engaged in the business, among other things, of drilling, completing, and producing oil and gas wells in the state of North Dakota, the state of Wyoming, and other states.

6. Upon information and belief, New IPT is in the business of, among other things, performing services as a contractor for companies in the business of drilling, completing, and producing oil and gas wells in the state of North Dakota, the state of Wyoming, and other states.

7. On July 28, 2016, Integrated Petroleum Technologies, Inc. ("IPT"), New IPT's predecessor in interest, executed a Master Service Agreement ("Agreement"), wherein Wave agreed to add IPT's name to Wave's approved list of contractors. The Agreement would control and govern all work performed by IPT for Wave. A true and correct copy of the Agreement is attached hereto as **Exhibit A** and is made a part of this Complaint.

8. The Agreement provides that "[a]ll work or services rendered or performed by [IPT] shall be done with due diligence, in a good and workmanlike manner, using skilled, competent and experienced workmen and supervisors in accordance with good oilfield servicing practices." *See* Agreement, Ex. A.

9. In March of 2018, IPT was engaged to design and supervise operations for the drilling and completion of a well to be located in Weston County, Wyoming. The well to be drilled was the Slagle 41-65-05-08-ATH well, to be located as follows:

    a. Surface Location: 25 feet from the south line and 410 feet from the east line of Section 31, Township 42 North, Range 65 West; Weston County, Wyoming; and

  b. Bottom Hole Location: 2317 feet from the north line and 660 feet from the west line of Section 8, Township 41 North, Range 65 West; Weston County, Wyoming.

 10. Because of the location of another well in the vicinity of the proposed location for the Slagle 41-65-05-08-ATH well, Wave sought and received approval from the Wyoming Oil and Gas Conservation Commission to change the name and location of the Slagle 41-65-05-08-ATH well to the Slagle 42-65-31-30-DTH well (API # 49-045-29479) ("Slagle Well"), to be located as follows:

  a. Surface Location:  25 feet from the south line and 410 feet from the east line of Section 31, Township 42 North, Range 65 West; Weston County, Wyoming; and

  b. Bottom Hole Location:  2334 feet from the south line and 660 feet from the east line of Section 31, Township 42 North, Range 65 West; Weston County, Wyoming.

 11. On April 13, 2018, IPT requested consent from Wave to assign the Agreement to New IPT, which had been formed and had taken ownership of the assets of IPT. Wave consented to an Assignment of the Agreement on April 19, 2018.  A true and correct copy of this consent request is attached hereto as **Exhibit B** and is made a part of this Complaint.

 12. On October 3, 2018, representatives of Wave met with representatives of New IPT and other third-party contractors to discuss the design parameters for the drilling of the Slagle Well.  The meeting covered a wide variety of matters essential to the design, drilling and completion operations for the Slagle Well.

 13. As a result of New IPT being engaged by Wave to assist Wave to prepare and implement a drilling plan for the Slagle Well and the October 3, 2018 meeting, New IPT prepared a Drilling Program for the Slagle Well ("Drilling Program").  A true and correct copy of the Drilling Program is attached hereto as **Exhibit C** and is made a part of this Complaint. The Drilling Program sets forth in detail the practices and procedures New IPT and others would follow in providing services to Wave for drilling and completing the Slagle Well.

14.     With respect to drilling and the setting of casing for the Slagle Well, the Drilling Program provided, among other things:

   a.     A vertical 12-1/4 inch hole would be drilled to approximately 2,500 feet and a minimum of 2,500 feet of 9-5/8-inch casing would be set. The Drilling Program noted that lost circulation[1] could be expected in the Fox Hills formation and provided for contingencies if there was lost circulation during the drilling of this portion of the vertical hole for Slagle Well.

   b.     After the cementing of the 9-5/8-inch surface casing, an 8-3/4-inch vertical hole was to be drilled for the Slagle Well to a depth of 5,113 feet, or the kickoff point ("KOP")[2].

   c.     After drilling a vertical hole in the Slagle Well to the KOP, a 65 degree curve was to be drilled to a true vertical depth ("TVD")[3] of 5,632 feet and a measured depth ("MD")[4] of 5,763 feet which was to constitute a top set depth 13 feet above the Turner formation, the target zone of the Slagle Well.

   d.     After finishing the drilling of the 8-3/4 inch hole from approximately 2,500 feet TVD to approximately 5,632 feet TVD, 7-inch casing was to be set covering the portion of the hole from the point where the surface casing was set (approximately

---

[1] Lost circulation "occurs when in the drilling process a cavern or some extremely porous formation is encountered into which the drilling mud escapes without returning to the surface." *Burger Drilling Col., Inc. v. Bauman*, 643 F.2d 240, 241 (5th Cir. 1981).

[2] The "kickoff point" means "the depth in a vertical hole at which a deviated or slat hole is started." United States Department of Labor, Occupational Safety and Health Administration, *Oil and Gas Well Drilling and Servicing eTool*, Glossary of Terms, https://www.osha.gov/SLTC/etools/oilandgas/glossary_of_terms_k.html (last visited Dec. 3, 2019). *See also Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 375 (5th Cir. 2019) ("Directional drilling is the process of drilling a well… down a path that begins vertical to the surface and, then, at the 'kickoff point' drills at an angle horizontal to the surface.")

[3] The true vertical depth is the "measurement from the surface to the bottom of the wellbore in a straight, perpendicular line." *Albert v. Dunlap Expl., Inc.*, 457 S.W.3d 554, 561 (Tex. App. 2015).

[4] The measured depth is the "actual length of the wellbore, i.e., the length of the pipe in the wellbore." *Albert*, 457 S.W.3d at 561.

2,500 feet) to the designated depth below the Niobrara formation and above the top of the Turner formation (approximately 5,632 feet TVD). The Drilling Program noted instability could be expected in the Carlile sub-interval[5] and provided for certain mitigation measures.

      e.      After finishing the drilling of the 8-3/4-inch hole, 7-inch intermediate casing was to be set and cemented from surface to a depth of 5,632 feet TVD (5763 feet MD).

      f.      After cementing and setting the 7-inch casing, a 6-1/8-inch hole was to be drilled laterally from 5,763 feet MD, a distance of approximately 1-1/2 miles, to a MD of 13,103 feet with approximately 6,721 feet of the lateral to be in the Turner formation.

      g.      After drilling the 6-1/8-inch hole in the Turner formation to a MD of 13,103 feet, a 4-1/2-inch production liner was to be run and cemented covering the lateral portion of the hole for the Slagle Well from 5,010 feet to TVD of 13,088 feet.

      h.      After cementing of the 4-1/2-inch production liner, the drilling rig was to be moved off location and a completion rig was to be moved on the Slagle Well to prepare for completion of the Turner formation.

15.      On October 18, 2018, the Slagle Well was spud.

16.      Notwithstanding the specifications contained in the Drilling Program, New IPT failed or refused to follow the specifications contained in the Drilling Program with respect to drilling the Slagle Well through the Carlile sub-interval.

---

[5] The Carlile is a sub-interval within the Niobrara formation which has been dissipated by many drillers in Wyoming.

17.     Under the direct supervision and control of New IPT for the drilling of the Slagle Well, sloughing shales were encountered while drilling through the Carlile sub-interval, identified by oversized pieces of shale in the drilling mud returns.

18.     As a result of the failure or refusal of New IPT to follow the specifications related to drilling through the Carlile sub-interval as set forth in the Drilling Program, the 8-3/4-inch hole planned and specified by the Drilling Program expanded in size in that portion of the hole where the 7-inch casing was to be set.

19.     New IPT did not properly condition the 8-3/4 inch hole to mitigate the expansion of the 8-3/4 inch hole in the Carlile sub-interval where the 7-inch casing was to be set. A conditioned hole for running casing would have sufficient mud weight and sufficiently low water loss to mitigate the sloughing shales. The sloughing shales led to the expanded 8-3/4 inch hole, an issue that led to 7-inch casing being set short of the planned setting depth.

20.     On October 23, 2018, Wave was made aware by New IPT that the 7-inch intermediate casing was at a depth of 5,682 feet, when its planned setting depth was to be 5,800 feet. While setting 7-inch casing short of the plan set forth in the Drilling Program was unsatisfactory to Wave, the 7-inch intermediate casing, which was planned to be set at 5,800 feet, was set short leaving 118 feet of uncased and exposed Carlile sub-interval. The 118-feet of exposed Carlile formation was an oversized 8-3/4-inch hole that continuously got larger because of the instability of the Carlile sub-interval.  The oversized open hole is known as a "rathole."[6]

21.     An oversized 8-3/4-inch hole, compared to a 6-inch hole designed for this section of Slagle Well, allowed for more unwanted mobility of pipe and slower flow rates within the rathole during all additional operations, including but not limited to, mud circulation, mud conditioning, rotating drill pipe, running a production liner, and cementing.

---

[6] The term "rathole" may have several distinct definitions. For the purposes herein, a "rathole" is an oversized open hole, caused by instability of the surrounding formation.

22. After the 7-inch casing was set short, drilling activities continued through the 7-inch, through the rathole to 13,103 feet MD. After reaching Total Depth ("TD"), New IPT attempted to run the 4-1/2-inch production liner.

23. New IPT encountered problems in running the 4-1/2-inch production liner. In an attempt to eliminate the problem, New IPT chose to continuously work the 4-1/2-inch production liner into the hole, attempting to reach approximately 15 feet from a planned TD, or 13,088 feet. During this operation, New IPT observed that circulation was established, pick up weight was normal, but movement of the liner down the hole was being hindered. In other words, New IPT was unable to reach the 4-1/2-inch production liner setting depth, approximately 15 feet from TD.

24. The continuous working of the pipe, consisting of picking up and slacking off, turning pumps on and off, caused the 4-1/2-inch liner to bow in the oversized rathole, buckle, and ultimately break in the rathole just beyond where the 7-inch intermediate casing was set at approximately 5,800 feet.

25. On October 31, 2018, a loss of string weight was reported to Wave via telephone call, indicating the 4-1/2-inch liner had parted or broken.

26. The estimated depth of parted casing and depth of top of the casing was reported to Wave on November 1, 2018. Wave agreed to one attempt to retrieve the partial 4-1/2-inch liner. It was confirmed that the top of the 4-1/2-inch partial liner was outside of 7-inch casing in the rathole, reducing the chances of recovery.

27. New IPT was unable to successfully retrieve the parted 4-1/2-inch liner.

28. Unable to retrieve the parted 4-1/2-inch production liner from the hole, the Slagle Well was temporarily abandoned.

## COUNT I

## BREACH OF CONTRACT

29. Wave restates and realleges the foregoing paragraphs, as if fully set forth herein.

30. Pursuant to the Agreement, IPT, and subsequently New IPT, agreed to perform its work with due diligence and in a good and workmanlike manner. IPT, and subsequently New IPT, further agreed to only use skilled, competent, and experienced workmen and supervisors in accordance with good oilfield servicing practices.

31. In October of 2018, New IPT and its workers failed to drill the Slagle Well with due diligence and in a good and workmanlike manner, leading to the breaking of the 4-1/2-inch liner, and the inability to successfully retrieve the broken 4-1/2-inch liner from the hole. This failure constitutes a breach of the Agreement.

32. As a result of said breach by New IPT, Wave has suffered damages in excess of $75,000.00, exclusive of interest and costs, as the Slagle Well can no longer be completed and produced, and Wave will be forced to plug and abandon the Slagle Well following Wyoming Oil and Gas Conservation Commission regulations.

## COUNT II

## NEGLIGENCE

33. Wave restates and realleges the foregoing paragraphs, as if fully set forth herein.

34. New IPT owed a duty to drill the Slagle Well in a good and workmanlike manner.

35. New IPT breached its duty when it continued to push the 4-1/2-inch liner forward in the Slagle Well's hole, causing the 4-1/2-inch liner to bow, buckle, and ultimately break.

36. New IPT's breached duty caused damage to Wave, as Wave can no longer complete and produce the Slagle Well, and the Slagle Well has since been temporarily abandoned.

37. New IPT's actions are the proximate cause of the Slagle Well's abandonment, as it did not even inform Wave that it continued to force the 4-1/2-inch liner into the hole, leading to its breakage, nor was Wave informed that the liner was damaged until after New IPT's fishing attempt to retrieve the broken liner failed.

38. As a result of New IPT's negligence, Wave has suffered damages in excess of $75,000.00, exclusive of interest and costs.

## DEMAND FOR JURY TRIAL

39. Under Rule 38 of the Federal Rules of Civil Procedure, Wave demands a trial by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Wave respectfully requests judgment as follows:

a. For a judgment against New IPT and in favor of Wave, awarding Wave damages as a result of New IPT's breach of the Agreement;

b. For a judgment against New IPT and in favor of Wave, awarding Wave damages as a result of New IPT's breach of express warranties;

c. For a judgment against New IPT and in favor of Wave, awarding Wave damages proximately caused by the negligence of New IPT;

d. An order awarding Wave attorneys' fees and all other costs of this action; and

e. For such further and additional relief as determined by the Court to be just and equitable.

**DATED** this 12th day of December, 2019.

                                       **FREDRIKSON & BYRON, P.A.**

                                    By:   */s/Lawrence Bender*
                                            Lawrence Bender, ND Bar #03908
                                            1133 College Drive, Suite 1000
                                            Bismarck, ND 58501
                                            Telephone: 701-221-8700
                                            lbender@fredlaw.com

                                            *Attorneys for Plaintiff*
                                            *Wave Petroleum Operating, LLC*

68939222 v1